UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DOW SILICONES CORPORATION,

    Defendant.
_____/

Case No. 1:19-cv-11880

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO ENTER MODIFIED CONSENT DECREE**

In 2020, this Court entered a revised consent decree requiring Defendant Dow Silicones Corporation to pay $4,550,000 in civil fines and complete significant environmental reforms, including the competition of a five-part Stormwater Capacity and Pollutant Evaluation by January 24, 2023. In April 2024, the Government filed notice of a proposed consent decree modification to extend Defendant's deadline to complete the Stormwater Evaluation by three years, to January 24, 2026. Although the Federal Registrar published the proposed modification and scheduled a 30-day comment period, no public comments were received. Accordingly, on June 6, 2024, the Government filed an unopposed motion to enter the proposed modification. Because the proposed modification is narrowly tailored to accommodate the delay caused by unforeseen weather conditions and proposal complexity, the Government's motion will be granted and the modified consent decree will be entered.

**I.**

In June 2019, the Government filed a complaint alleging Defendant Dow Silicones Corporation violated (1) the Clean Air Act; (2) the Comprehensive Environmental Response,

Compensation, and Liability Act (CERCLA); (3) the Emergency Planning and Community Right to Know Act (EPCRA), (4) the Resource Conservation and Recovery Act (RCRA); and (5) and the Clean Water Act, at their 550-acre Midland, Michigan chemical manufacturing facility (the "Facility"). *See generally* ECF No. 1.

Specifically, the Complaint alleges Defendant violated the Clean Air Act by "among other things, failing to implement a facility-wide leak detection and repair program, under-reporting the total quantity of benzene in the Facility's waste streams, and failing to control emissions of hazardous air pollutants and volatile organic compounds." ECF No. 2 at PageID.56. The Complaint alleges DSC violated CERCLA and EPCRA "by failing to report releases of hazardous substances in a timely manner," and further violated the RCRA "by failing to characterize hazardous waste properly, and by failing to inspect and maintain hazardous waste secondary containment areas adequately." *Id.* at PageID.57. And the Complaint alleges Defendant violated the Clean Water Act "by failing to comply with the terms and conditions of its National Pollutant Discharge Elimination System permit, including by failing to maintain and implement the storm water pollution prevention plan for the Facility." *Id.*

On June 25, 2019, the Government filed Notice of Lodging of Consent Decree, ECF No. 2, and published a proposed Consent Decree, ECF No. 2-1, to the Federal Register for a 30-day comment period. ECF No. 2 at PageID.59. After this comment period, Plaintiff filed an unopposed motion to enter a Revised Consent Decree, based on the sole comment received from the Environmental Law and Policy Center regarding public awareness of Defendant's compliance. *See* ECF No. 6. Among other things, the Revised Consent Decree required Defendant to pay a civil penalty of $4,550,000 and implement a "suite of supplemental environmental projects," including the completion of a Stormwater Capacity and Pollutant Evaluation (the "Stormwater Evaluation")

by January 24, 2023. *See* ECF Nos. 6 at PageID.283; 6-1 at PageID.385–86. The Stormwater Evaluation included the following components, which Defendant was to complete in sequential order: (1) a Containment Dike Assessment; (2) a Detention Basin Assessment; (3) a Chemical Sewer Capacity Study; (4) a Detention Basin Monitoring Study; and (5) a Containment Dike Monitoring Program. *See* ECF Nos. 6-1 at PageID.385–417. To complete the latter three components, the United States Environmental Protection Agency (EPA) is required to first approve Defendant's proposed study or program plans. ECF No. 13 at PageID.987.

This Court entered the Revised Consent Decree on January 24, 2020. ECF Nos. 7; 8. On April 24, 2024, the Government filed notice of a proposed Modification to the Revised Consent Decree. ECF No. 12. Although the Government published the proposed Modification with the Federal Register for public comment, no comments were received. ECF No. 13 at PageID.983, 985. Accordingly, on June 6, 2024, the Government filed a Motion to Enter a Material Modification to the Revised Consent Decree. ECF No. 13.

The proposed Modification extends Defendant's deadline to complete the Stormwater Evaluation by an additional three years, to January 24, 2026. *Id.* at PageID.987. The Government explains that "the Parties did not anticipate the length of time it would take to finalize key components" of the Stormwater Evaluation, and that they "encountered significant delays in reviewing, commenting on, and revising study plans and submissions." *Id.*; *see also* ECF No. 13-1 at PageID.1104–06. Notably, the Government also explains that Defendant "supports entry" of the Modified Revised Consent Decree. ECF No. 13 at PageID.983, 989 (noting that "the Parties agreed in the Modification to extend the [Evaluation] deadline by 36 months").

**II.**

When reviewing a motion to modify a consent decree, courts employ a two-part standard.

*See Jud. Watch, Inc. v. Adams*, 485 F. Supp. 3d 831, 838 (E.D. Ky. 2020). First, the moving party "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992). A significant change of circumstances warrants consent decree modification "(1) 'when changed factual conditions make compliance with the decree substantially more onerous,' (2) 'when a decree proves to be unworkable because of unforeseen obstacles,' or (3) 'when enforcement of the decree without modification would be detrimental to the public interest.'" *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1018 (6th Cir. 1994) (quoting *Rufo*, 502 U.S. at 384)

If the movant establishes a significant change in circumstances, courts then consider "whether the proposed modification is suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 391. Importantly, at this step, courts "should defer to . . . government administrators, who have the primary responsibility for elucidating, assessing, and solving" consent decree implementation. *Id.* (internal quotations omitted).

### III.

The Government has established that a significant change in circumstances warrants the proposed Modification. The Government attached the declaration of Jennifer M. Welch—the EPA Environmental Engineer responsible for monitoring Defendant's implementation of the Stormwater Evaluation. ECF No. 13-1 at PageID.1000–01. Although Defendant has completed two of the five Stormwater Evaluation components, *id.* at PageID.1004–05, Welch has demonstrated numerous ways in which the initial January 24, 2023 deadline has "prove[n] to be unworkable because of unforeseen obstacles." *See Vanguards*, 23 F.3d at 1018; *Rufo*, 502 U.S. at 384.

Regarding the Chemical Sewer Capacity Study—the third component of the Stormwater

Evaluation—Welch averred that Defendant "timely submitted" its proposed plan to the EPA for review and approval on September 20, 2020. ECF No. 13-1 at PageID.1005. Although the Parties initially estimated the EPA would review, tweak, and approve the plan within *three* months, Defendant's plan was "so complex that EPA hired a contractor to assist in reviewing and commenting on it" and did not approve the plan until *eleven* months after its submission. *Id.* at PageID.1005–06. Welch further averred that a July 2022 drought in Midland, Michigan delayed Defendant's competition of "required hydrologic and hydraulic model calibration and validation steps" by five months. *Id.* at PageID.1007–08.

Regarding the Detention Basin Monitoring Study—the fourth component of the Stormwater Evaluation—Welch similarly averred that the complexity of Defendant's 1,500-page proposal caused the EPA to hire contractors to assist their review, which took *seventeen months* longer than the Parties initially anticipated. *Id.* at PageID.1009–10.

Turning to the fifth and final component of the Stormwater Evaluation—Welch noted that Defendant's Containment Dike Monitoring Program proposal is "not yet due" because the third and fourth components are not yet complete. *Id.* at PageID.1012–13. Accordingly, the proposed Modification seeks a final deadline of January 24, 2026 "to reflect the reality of the remaining timeline for the Chemical Sewer Study Final Report or the [Detention Basin Monitoring] Study Final Report." *Id.* at PageID.1013. In sum, the Government has sufficiently shown that unforeseen weather conditions and proposal complexity warrant the consent decree's Modification.

Turning to step two, the proposed Modification is "suitably tailored" to these changed circumstances. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383, 391 (1992). The Modification extends the Stormwater Evaluation deadline by three years, to January 24, 2026, and accordingly adjusts a Chemical Sewer Study component deadline to September 30, 2023. ECF No.

12-1 at PageID.764. The only other change contemplated by the Modification is a new paragraph requiring Defendant to mitigate any environmental harm which may result from the deadline extension.[1] *Id.* at PageID.764–67. On this point, the Parties agree that the risk of environmental

---

[1] The new "mitigation" paragraph provides:
    122-1. Mitigation

To mitigate any environmental harm associated with the extension of time to complete the Stormwater Capacity and Pollutant Evaluation as provided by the First Material Modification, DSC shall implement the following measures.

**a**. Limitations on Discharges from the 4705 Detention Basin. Until the Defendant has received approval from EPA on DSC's submission of the updated SWPPP required pursuant to Paragraph 122, during regular non-emergency operations, Defendant shall not discharge from the 4705 Detention Basin to Lingle Drain unless the liquid contents of the 4705 Detention Basin meets the numeric limitations for certain pollutants as follows:
    (1) less than 30 mg/L of 5-day biochemical oxygen demand (BOD5);
    (2) less than 120 mg/L of chemical oxygen demand (COD);
    (3) less than 400 colony forming units per 100 milliliters (CFU/100mL) of fecal coliform;
    (4) between 6.5 and 9.0 standard units (S.U.) of pH;
    (5) less than 25 milligrams per liter (mg/L) of total organic carbon (TOC);
    (6) less than 100 mg/L of total suspended solids (TSS); and
    (7) less than 50 nephelometric turbidity units (NTU) of turbidity.

**b**. Defendant shall monitor (i.e., collect samples and conduct laboratory or field measurements and analyses) the liquid contents of the 4705 Detention Basin prior to discharge from the Detention Basin in accordance with subparagraphs c through f, below.

**c**. Defendant shall collect a single vertical grab sample, or multiple grab samples aligned on a vertical axis that shall be combined into a single vertical composite sample, of the 4705 Detention Basin contents at the location of the concrete apron of the 4705 Detention Basin discharge structure (a.k.a., diversion pond outlet structure) and that characterizes the liquid contents across the complete depth of the 4705 Detention Basin at that location.

**d**. Defendant shall conduct the appropriate laboratory analysis or field measurements of all samples collected pursuant to subparagraph a, above, using CWA approved methods as identified in 40 C.F.R. Part 136. If the analytical results of all samples meet the numeric limitations listed above in this paragraph, Defendant may discharge from the 4705 Detention Basin to Lingle Drain if, since

harm associated with the Stormwater Evaluation extension is minimal and "EPA is [un]aware of any actual environmental harm associated with the extension of time in the Modification." ECF No. 13 at PageID.989. In sum, the unopposed Modification *only* amends the Revised Consent

---

    the samples were collected pursuant to subparagraph a, above, there have been no wet weather events that resulted in additional stormwater entering the 4705 Basin and there have been no spills or other emergencies at the facility that resulted in the potential for pollutants to enter the 4705 Detention Basin.

    **e**. For each vertical grab sample, or vertical composite sample, collected, Defendant shall document the following:
> (1) date and time of sample(s) collection; name and title of the person or persons collecting the sample(s);
> (2) the type of sample(s) collected (e.g., single vertical sample or a vertical composite sample);
> (3) if a vertical grab composite sample was collected, the number of individual grab samples along the same vertical axis and the vertical distance between each grab sample; all preservatives used; chain-of-custody;
> (4) details of field measurements (e.g., field measurement equipment type, calibration information, etc.);
> (5) laboratory analytical records; and the date and time (both the starting and stopping time) that the 4705 Detention Basin was discharged following sample(s) collection.

    **f**. In each Annual Report submitted under Section IX (Reporting Requirements), Defendant shall include a summary of all information documented for each sample collected pursuant to Paragraph 122-1.a and a statement about whether the sample(s) met the required limitations set forth in this Paragraph.

    **g**. Defendant certifies the truth and accuracy of each of the following:
> i. that, as of the date of executing the First Material Modification of the Revised Consent Decree, Defendant is not required to perform the actions required by Paragraph 122.1 above by any federal, state, or local law or regulation or by agreement, grant, or as injunctive relief awarded in any other action in any forum;
> [i]i. that the actions required in Paragraph 122.1 above are not actions Defendant was planning or intending to perform, or implement other than in settlement of the claims resolved in the Consent Decree; and
> [i]ii. that Defendant has not received and will not receive credit for the actions required in Paragraph 122.1 above in any other enforcement action.

ECF No. 12-1 at PageID.764–67.

Decree to the extent absolutely necessary to accommodate the unforeseen delays in completing the Stormwater Evaluation, and to mitigate any risks of environmental harm associated with the extended Evaluation deadline.

Therefore, having concluded the proposed Modification is warranted, reasonably tailored, fair, adequate, and protective of the public interest, the Government's Motion will be granted and the Modified Revised Consent Decree will be entered.

**IV.**

Accordingly, it is **ORDERED** that the Government's Motion to Enter Material Modification of the Revised Consent Decree, ECF No. 13, is **GRANTED.**

Further, it is **ORDERED** that the Modified Revised Consent Decree, *see* ECF No. 12-1, is **ENTERED.** The Court will retain jurisdiction until the consent decree is terminated for the purpose of enforcement.

Dated: July 1, 2024                                        s/Thomas L. Ludington
　　　　　　　　　　　　　　　　　　　　　　　　　　　THOMAS L. LUDINGTON
　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge